COMMONWEALTH *vs.* ROBERT T. PALLADINO.

Middlesex.    November 4, 1963. — January 24, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Evidence,* Cumulative evidence, Cross-examination, Judicial discretion, Evidence "come at by exploitation" of illegal arrest, Relevancy and materiality. *Practice, Criminal,* Exceptions: whether error harmful. *Error,* Whether error harmful.

Alleged error at the trial of an indictment for robbery in the admission in evidence of an out of court statement by the victim identifying the defendant as the robber was not prejudicial where the statement was merely cumulative of testimony by the victim identifying him as such. [722–723]

No abuse of discretion appeared at the trial of an indictment in the exclusion of a question to a witness for the Commonwealth on cross-examination as to whether she considered herself "just a prosecution witness." [723]

If a statement by the defendant in a criminal case could be interpreted as contradicting an alibi asserted by him and if it was error to admit the statement in evidence at the trial, the error was not prejudicial where the statement, even so interpreted, was merely cumulative of other evidence showing a clear and unequivocal contradiction of the alibi by the defendant.  [724–725]

Even if an arrest of the defendant in a criminal case was illegal, certain evidence as to statements made by him at a police station and identification of him there by an officer was not, in the circumstances, inadmissible as "come at by exploitation of" the illegality and tainted thereby. [725]

At the trial of an indictment, a parking lot ticket showing the time when an automobile involved was brought to the parking lot was properly admitted as relevant to the issue of an alibi asserted by the defendant that he was in the city where the parking lot was located at the time of the commission of the crime in another city.  [726]

INDICTMENT found and returned on February 7, 1962.

The case was tried in the Superior Court before *Tomasello*, J.

*Joseph G. Crane* (*Monroe L. Inker* with him) for the defendant.

*Aaron K. Bikofsky,* Assistant District Attorney (*Ruth I. Abrams,* Assistant District Attorney, with him), for the Commonwealth.

SPALDING, J.   Under an indictment charging unarmed robbery, the defendant was found guilty.   The case was tried subject to G. L. c. 278, §§ 33A–33G, and comes here by appeal.

There was evidence of the following: Mrs. Norma Cort was employed as a bookkeeper by the Sidney Hill Country Club in Newton.   Early in the afternoon of January 22, 1962, she placed cash and checks amounting to $1,931.64 in a plastic pouch which she was to take to a bank for the purpose of making a deposit.   Between 2:35 and 2:45 P.M. she went to the club's parking space where her automobile was parked, carrying the pouch in her left hand and her purse in her right.   As she was proceeding toward her car a man, whom Mrs. Cort later identified as the defendant, jumped out of an automobile and said "Give me that," took her arm, and seized the pouch from her hand.   He got back into the car and drove away.   The car was a light colored Chev-

rolet bearing a Massachusetts registration plate with the number 266–145.

James P. Treddin, a Newton police officer, testified that on January 22, 1962, he was assigned to the Chestnut Hill Shopping Center. At about 2:40 P.M. he was in his car in the parking space behind Filene's store when he observed two men, one of whom was the defendant, walking rapidly from the direction of a cream colored Chevrolet (later identified as the car used in the robbery). The men entered a second automobile, which was an Oldsmobile with a Massachusetts registration number R35–299.

Officer Frongillo of the Winchester police department, as a result of information about the robbery received by him, went to an address in Somerville shortly after 7 P.M. While there he saw the above mentioned Oldsmobile approaching, which was owned by one Houde, an uncle of the defendant. He stopped the car and placed the defendant, who was driving it, under arrest. Thereupon the Somerville police were notified and they took the defendant to the Somerville police station. Frongillo stayed there with the defendant until the Newton police arrived.

, The defendant by way of an alibi testified that between the hours of two and four on the afternoon of January 22 he was shopping at certain stores in Boston, and that he was not in Newton at any time on that day.

1. The defendant argues (assignment of error No. 1) that the court erred in admitting a statement which Mrs. Cort made to Captain Burke in the Newton police station because it was not made in the presence or hearing of the defendant who was then under arrest. The interrogation on which the assignment was based was as follows: ASSISTANT DISTRICT ATTORNEY: "And did you say something upon seeing the defendant in this room?" COUNSEL FOR THE DEFENDANT: "I object." THE JUDGE: "Objection overruled." A. "That was the man." We are of the opinion that this evidence did not harm the defendant. Mrs. Cort had, both before and after the testimony objected to, identified the defendant as the man who had robbed her. The

challenged testimony was merely cumulative and its admission was not prejudicial. *Commonwealth* v. *Taylor,* 327 Mass. 641, 650. *Commonwealth* v. *Gliniecki,* 339 Mass. 464, 469.

2. The defendant's assignments of error Nos. 2, 6, 10, and 15 can be disposed of in a word or two. These relate to various rulings involving the scope and extent of cross-examination, but the defendant appears to press only the second.[1] There was no error. The limits of cross-examination rest largely in the sound discretion of the trial judge. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 593. No abuse of discretion was shown in excluding the question on which the second assignment is based. The defendant was afforded ample opportunity on cross-examination to bring out any bias the witness might have had.

3. The defendant contends that his arrest by Officer Frongillo was illegal and that this rendered certain evidence, which we shall discuss hereinafter, inadmissible.[2] Assignments of error Nos. 3, 4, 11–14. The defendant argues that Officer Frongillo, a member of the Winchester police force, had no right as an officer to arrest the defendant in Somerville for an alleged offence committed in Newton. His right to arrest in these circumstances, it is urged, was no greater than that of a private citizen. By that test, so runs the argument, the arrest was illegal. But even if Frongillo had the rights of an officer in making the arrest, the defendant takes the position that the arrest, which was without a warrant, was illegal because Frongillo did not have reasonable grounds for believing the defendant had committed a felony. It seems clear to us that Frongillo did have probable cause to believe that the defendant had committed a felony. However, in our view of the case we deem

---

[1] This assignment is based on the exclusion of the following question to a witness called by the Commonwealth: "Mrs. Cort, do you consider yourself just a prosecution witness?"

[2] The defendant should have raised these questions by a motion to suppress in advance of trial. See *Commonwealth* v. *Lewis, ante,* 373, 382. However, the trial judge permitted these questions to be raised at the trial and we will consider them.

it unnecessary to decide these questions, for even if the arrest was illegal the result would be the same.

No contention is made that there was a search incidental to the alleged unlawful arrest. Thus we are not concerned with the introduction of physical evidence illegally obtained. The lawfulness of the arrest becomes of importance because there was testimony introduced by the Commonwealth that during the period following the arrest the defendant made contradictory statements and was identified by Officer Treddin. The defendant argues that this evidence was tainted by the unlawful arrest and was improperly admitted because it was "fruit of the poisonous tree." *Nardone* v. *United States,* 308 U. S. 338, 341. See *Commonwealth* v. *Spofford,* 343 Mass. 703, 708. The most recent discussion of this subject by the Supreme Court of the United States will be found in *Wong Sun* v. *United States,* 371 U. S. 471, where the court said at pages 487–488, "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

. The defendant seeks to exclude all testimony as to conversations or observations following the arrest and at the Somerville police station. We assume, in view of the holding in *Wong Sun* v. *United States, supra,* that some of the testimony as to what the defendant said immediately following the arrest was inadmissible. We are of opinion, however, that none of this evidence was harmful. The only evidence which conceivably could be harmful came from Frongillo who testified that "[The defendant] asked me what was wrong. . . . I asked him what he was doing in Newton. His reply was 'I was not in Newton.' The reply [to that] was 'What was your car doing there?' He says 'I was buying my girl a coat.' " This possibly could be

considered a contradiction of his alibi that he was in Boston all day. But in view of the fact that the defendant has consistently maintained that he was not in Newton the statement is more likely to have conveyed the meaning that he was not in Newton but was buying a coat in Boston for his girl. The defendant's counsel brought this out in cross-examination as follows: Q. "And he never said, officer, that he was buying his girl a coat in Newton, did he?" A. "He didn't." But even if the remark could be construed as contradicting his alibi, it was only cumulative, and added nothing to an unequivocal contradiction which according to other officers was made later at the police station. Therefore, even if the admission of that testimony was error it was harmless error both because the statement probably did not contradict the defendant's alibi and because even if it did it added nothing to the testimony of the defendant's later clear and unequivocal contradiction at the police station. We think that this result is not repugnant to anything decided in *Fahy* v. *Connecticut,* 375 U. S. 85.

The testimony based on later events at the Somerville police station could have harmed the defendant. Here, according to the testimony, the defendant unequivocally contradicted his alibi. Captain Burke testified that he asked the defendant what he was doing in the Filene's parking lot and he testified that "[The defendant] said he was over to Filene's to buy his girl a coat." That statement contradicted the defendant's alibi that he was in Boston all day. However, that evidence, based on statements an hour after the arrest at the Somerville police station to which he had lawfully been taken by the Somerville police was not "come at by exploitation" of the alleged illegal arrest.

There was also testimony from Officer Treddin consisting of his identification of the defendant at the Somerville police station as one of the men he had seen change cars in the Filene's parking lot. This identification although harmful to the defendant was also clearly "come at . . . by means sufficiently distinguishable to be purged of the primary taint."

4.  Finally, the defendant argues (assignments of error Nos. 5, 7–9) that certain evidence relating to the whereabouts of the Oldsmobile on the afternoon of the robbery was irrelevant and prejudicial.  A ticket was introduced which indicated that the car was brought to a Stuart Street parking lot in Boston at 3:28 P.M.[3]  The defendant was seen in the car at about 2:40 P.M. and later at 7:30 P.M.   In view of the fact that his defence was based on an alibi which placed him in Boston between 2 P.M. to sometime after 4 P.M., we cannot say that the tracing of the car from the Chestnut Hill Shopping Center at 2:40 P.M to a parking lot in Boston at 3:28 P.M. did not throw light on the truth of the alibi.  See *Commonwealth* v. *Durkin,* 257 Mass. 426, 427–428.  There was no error in the admission of this evidence.

*Judgment affirmed.*

---

[3] Although the parking lot ticket bore the date "December 22d," evidence was introduced that the lot's stamping machine was out of order and stamped "December 22d" on tickets used on January 22.  Thus the jury could have found that the ticket was in fact issued on January 22, the day of the crime.