COMMONWEALTH *vs.* JAMES FERRERI. Nos. 89-P-1227 & 90-P-599. June 12, 1991. *Statute*, Construction. *Due Process of Law*, Vagueness of statute, Notice. *Dog. Constitutional Law*, Trial by jury. *Practice Criminal*, Required finding. *Words*, "Excessive barking."

On March 24 and December 11, 1989, the defendant was found guilty of refusing to comply with a District Court order, issued under G. L. c. 140, § 157, as amended by St. 1985, c. 455, that he "forthwith" remove his dogs from his property. He makes numerous claims on appeal, most of which turn on his assertion that § 157 is unconstitutional. We affirm the judgments.

As here pertinent, § 157 reads: "If any person shall make complaint in writing to the selectmen of a town . . . that any dog owned or harbored within . . . their jurisdiction is a nuisance by reason of . . . excessive barking or other disturbance . . . such selectmen . . . shall investigate or cause to be investigated such complaint . . . and may make such order concerning the restraint or disposal of such dog as may be deemed necessary." The statute provides for review of the selectmen's decision by the District Court. If the selectmen's order is affirmed, and thereafter the order of the court is disobeyed, penalties (fines or imprisonment) may be imposed.

On December 16, 1987, the Lunenberg board of selectmen (board) notified the defendant in writing that it had received "numerous complaints" concerning the "excessive amount of barking by your dogs during all hours of the day and night." The letter further advised that an investigation (hearing) was to be held, after which the board "intend[ed] to make whatever order necessary concerning the restraint and/or disposal of your dogs."

At the hearing, neighbors and the Lunenberg dog officer appeared. It appears from the board's decision that there was evidence to support its findings and conclusions: "[I]t is the opinion of the Selectmen that the Ferreri dogs [anywhere between nine and sometimes as many as fifteen] are a nuisance by virtue of excessive barking. In addition to the excessive barking, the dogs are unrestrained and defecate on their neighbors [*sic*] lawns." The defendant was ordered to remove the dogs within ninety days.

Upon the defendant's request, there was a de novo hearing in the District Court. In addition to the evidence, the judge (by agreement of the parties) took a view. He found that the defendant's property "is situated in a residential neighborhood in which the homes are located very close to one another"; whenever a vehicle drives by or one dog barks, all the dogs "join in chorus"; numerous complaints had been made to the police and dog officer; the "sheer density of the neighborhood coupled with the number of dogs which [the defendant] maintain[s] has created an intolerable situation for the neighborhood"; the barking is excessive; and the "normal noises of a close neighborhood is all that it takes to get the dogs barking." He further found that the "dogs' barking creates a disturbance, disturbs

sleep, and has frightened children." On September 16, 1988, the judge ordered that "all of the dogs be removed . . . forthwith."

1. *Facial attack on § 157*. Rather than consider whether the defendant is precluded by the collateral bar rule from questioning the constitutionality of § 157 in defense of his violations of the removal order, we will accept (for purposes of deciding the appeal) his unlikely claim that he had no other means by which to challenge the statute. See *Walker* v. *Birmingham*, 388 U.S. 307 (1967); *In re Providence Journal Co.*, 820 F.2d 1342 (1st Cir. 1986); *State Realty Co. of Boston, Inc.* v. *MacNeil*, 341 Mass. 123 (1960). We will further accept the defendant's claim that the statute is penal in nature, see *American Dog Owners Assn.* v. *Lynn*, 404 Mass. 73, 78 (1989), and that it "must therefore define the activity proscribed 'with sufficient definiteness that ordinary people can understand what conduct is prohibited.' " *Id.*, quoting from *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985), which quotes from *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983).

The defendant argues that the term "excessive barking" is too vague to withstand facial scrutiny. "[T]he question whether [the statute] could withstand 'facial' scrutiny is irrelevant. Rather the question is whether the statute, or, more closely, the particular words objected to, identify for citizens and law enforcement authorities a core of condemned conduct, and whether this case, as it shaped up, appears to be within the core: the inquiry is contextual." *Commonwealth* v. *Love*, 26 Mass. App. Ct. 541, 545 (1988), and cases therein cited. And, "[a] statute is not vague in the outlawed constitutional sense 'if it requires a person to conform his conduct to an imprecise but comprehensible normative standard . . . .' *Commonwealth* v. *Williams*, 395 Mass. [302,] 304 [1985], quoting from *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). Such a standard is not impermissibly vague even though reasonable minds might differ whether particular conduct at the periphery of the 'core' comports with it . . . ." *Id.* at 546. As applied to this case, the term "excessive barking" gave the board more than sufficient guidance by which to carry out the responsibility imposed upon it under § 157. Compare *American Dog Owners Assn.* v. *Lynn*, 404 Mass. at 79-80.

2. *Right to due process*. In claiming that the statute violates fundamental notions of due process, requiring notice, the opportunity to be heard, and the right to cross-examine witnesses, the defendant completely ignores the process afforded him. The board gave the defendant written notice of its intention to hold a hearing on the numerous complaints it had received. The notice cited § 157 and further provided that the board intended "to examine the complainants under oath" at a specified time and place. From the board's decision, it appears that twelve witnesses, in addition to the defendant, appeared before the board, gave sworn testimony, and submitted to questioning, apparently by the board.

Thereafter, another hearing was conducted by the District Court magistrate, who affirmed the board's decision. Next, the defendant exercised his right "to a de novo hearing" before a District Court judge. At that hearing, the judge was offered testimony and exhibits, and he took a view of the premises. After the hearing, the judge wrote a detailed and comprehensive decision explaining the basis for his order that the dogs were to be removed from the defendant's property "forthwith."

If the defendant's claim has any vestige of merit, it is only in the abstract. The procedural history of this case establishes that the defendant was afforded all the process due him. We do not think it necessary to respond to his assertion that notice was defective in that it failed to identify which of his many dogs was barking excessively.

3. *Punitive forfeiture.* Characterizing the statute as one calling for a punitive forfeiture without a jury trial, the defendant argues that the statute violates the Massachusetts Declaration of Rights, art. 12. Section 157 is a nuisance abatement statute which allows for penalties in the event of a violation of a removal or restraint order. We reject the defendant's claim, that the statute violates his right to a jury trial on the issue of the need for the restraint or removal, for those reasons discussed in *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 778-781 (1978), and further explained in *Commonwealth* v. *One 1972 Chevrolet Van*, 385 Mass. 198, 199-201 (1982). We think it important to point out that the present appeals concern convictions following *jury-waived* trials on the punitive portions of § 157 which are separate and distinct from the remedial provisions.

4. *Required finding of not guilty.* It was not incumbent upon the Commonwealth to show that the dogs in the defendant's possession on the dates of the complaints were identical in being and number to the dogs which were the subject of the removal order. The dog officer's testimony was more than sufficient to allow the jury to consider whether the defendant had failed to comply with the order that he remove all the dogs. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979).

5. *Double jeopardy.* If there is merit in the defendant's claim that he was twice placed in jeopardy for the same offense, it eludes us. See *Commonwealth* v. *Carpenter*, 22 Mass. App. Ct. 911, 912 (1986).

*Judgments affirmed.*

*Steven M. Wise* for the defendant.
*Sean J. Gallagher*, Assistant District Attorney, for the Commonwealth.